493 So.2d 206 (1986)
Judith Picou SAMBOLA
v.
Danny Joseph SAMBOLA.
No. 86-CA-129.
Court of Appeal of Louisiana, Fifth Circuit.
July 23, 1986.
*207 Sydney J. Parlongue, Parlongue & Riegel, New Orleans, for defendant-appellee.
Bernard M. Plaia, Jr., Metairie, for plaintiff-appellant.
Before KLIEBERT and GAUDIN, JJ., and NACCARI, J. Pro Tem.
GAUDIN, Judge.
This case involves the transfer of custody of a seven-year-old boy from the mother to the father because the mother moved with her new husband to Sumatra, Indonesia.
There are actually two issues involved in this proceeding. Initially, there is the factual question of the child's best interests regarding the move to Sumatra. Also, there is the legal problem concerning a change in custody if the trial judge decides, as in fact he did, that the young boy's interests would be better served by his remaining with his father in Louisiana.
Considering the testimony and other circumstances, we cannot say that the trial judge erred in deciding that for personal safety and other reasons the child should stay here; however, switching custody to the father in the absence of any neglect or misconduct on the mother's part was erroneous. An order of joint custody, in accord with C.C. arts. 146 and 157, should have been rendered.
The background is not in serious dispute. Danny J. Sambola and Judith Picou were married on May 10, 1977 and one child was born of this union, Danny Jr. Mrs. Sambola filed for divorce in March, 1983, contending that she and her husband had been living separate and apart for one year. A judgment of divorce was signed on October 25, 1983, and Mrs. Sambola was given custody of her son pending further consideration of a joint custody arrangement.
On January 24, 1984, Mr. Sambola filed a rule to have visitation rights established. Mrs. Sambola was now Mrs. Edwin Pruitt and she and Danny Jr., along with her new husband, were living in Lafayette, Louisiana. A judgment was rendered on April 23, 1984, fixing visitation for Mr. Sambola every other weekend, five weeks during the summer and on alternate holidays.
Shortly thereafter, Mr. Pruitt was transferred to Sumatra for a period of three years. Mrs. Pruitt filed a rule to have Mr. Sambola's visitation rights altered, and the rule was heard on October 25, 1984. On November 5, 1984, the trial judge denied the motion and ordered Mrs. Sambola "... not to remove the child to Sumatra, Indonesia." Nonetheless, Mrs. Pruitt went overseas on December 7, 1984, taking Danny Jr. with her in defiance of the court order.
*208 Mr. Sambola filed a rule for custody on March 20, 1985, asking that a curator ad hoc be appointed to represent Mrs. Pruitt. The curator contacted Mrs. Pruitt, and eventually a hearing was held on September 23, 1985. The trial judge then ordered that:
(1) The temporary custody of Danny Jr. be vested with Mr. Sambola, said order to "... take effect immediately and continue until such time as a rule is brought by the mother for custody..."; and
(2) The temporary custody order shall be reconsidered by the trial judge once Mr. and Mrs. Pruitt establish a residence and are gainfully employed in Jefferson Parish.
The foregoing judgment was signed on October 1, 1985. On November 6, 1985, another judgment was rendered which, in part, reads:
"... the sole care, custody and control of the minor child ... be and it is hereby changed and is awarded to ... Danny Joseph Sambola, Sr."
It is from the change of custody order or orders that Mrs. Pruitt has appealed to this Court. The second judgment, signed on November 6, 1985, replaced the phrase "temporary custody" with "sole care, custody and control."
Seven witnesses testified at the September 23, 1985 change of custody hearing: Mrs. Pruitt; Danny Sambola Sr. and his new wife, Pamela; the paternal grandparents, Mr. and Mrs. Anthony Sambola Sr.; Erroll Soldani, a co-worker of Danny Sambola Sr.; and Dr. C.A. Cowardin, a child psychiatrist called by Mrs. Pruitt, who recommended that custody of Danny Jr. remain with his mother.
Mrs. Pruitt said that Danny Jr. had been attending an American school in Sumatra owned by Caltex (Mr. Pruitt's employer) and that Danny Jr. was doing well educationally and otherwise. Nonetheless, the trial judge decided to change custody but he added:
"... I want the husband to fully understand, that doesn't mean he's getting permanent custody..."
We take cognizance of the fact that Indonesia is a series of islands formerly known as the Dutch East Indies. Sumatra is one of the larger islands and it is situated very close to Singapore, almost directly south of Cambodia. Mr. and Mrs. Pruitt reside in a so-called company community with an approximate population of 5,000. Mr. Pruitt, when he testified at the October 25, 1984 hearing, described the political climate as "very stable."
Also testifying on October 25, 1984, and no doubt having a profound influence on the trial judge, was Dr. R. Dean Coddington, a child psychiatrist retained by the child's father. Dr. Coddington said that Danny Jr. "... was very clear that he wanted to stay with his daddy in this country..." Dr. Coddington testified that the young boy should stay in Louisiana because of his schooling and because he had a close relationship not only with his father but also with numerous other local family members, relationships that would be severed by a move to Sumatra.
Other than going to Indonesia, if such a move can be classified as not being in the young boy's best interests, the record is devoid of any indication that Mrs. Pruitt has not been a good mother. At least one member of this Court believes that residing in Sumatra for several years, the length of Mr. Pruitt's assignment there as a civil engineer, might well be a valuable cultural and educational experience for Danny Jr. However, a trial judge has wide discretion in matters dealing with the best interests of children, and we are unable to say that this broad discretion was breached by the trial judge's reluctance to see Danny Jr. live in a land very foreign to his earlier upbringing and in a place where the nearest major medical facility is 50 miles away, in a town called Rumba.
The Supreme Court of Louisiana, in Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979), and in other cases, said:
"Upon appellate review, the determination of the trial judge in child custody cases is entitled to great weight and will *209 not be disturbed unless a clear showing of abuse of discretion is made."
Finally, we note that the October 1, 1985 judgment would require Mr. and Mrs. Pruitt to reside in Jefferson Parish and for Mrs. Pruitt to be employed here before the trial court would reconsider his prior rulings. Under the instant facts and circumstances and in the total absence of any neglect by the mother, there is no statutory or jurisprudential basis for such requirements. It is only necessary that the Pruitts live where the physical and emotional safety of Danny Jr. would not be jeopardized, and such a place could be anywhere in Louisiana or even in another state.
For the foregoing reasons, we affirm the trial judge's decision directing that Danny Jr. stay here, and we amend the judgment of November 6, 1985 to state that Danny J. Sambola Sr. and Mrs. Judith P. Pruitt have joint custody of their son, Danny J. Sambola Jr., with the child to remain in Louisiana with Mr. Sambola during Mrs. Pruitt's residence in Indonesia.
Mrs. Pruitt is to have liberal visitation rights, as spelled out in prior judgments of the 24th Judicial District Court, and she has the absolute procedural right to subsequently move for a change in actual physical custody of Danny Jr. upon her return permanently from Indonesia.
Each party is to bear his or her costs of this appeal.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.