525 So.2d 218 (1988)
Anne Golden STEWART
v.
John Roberts STEWART, Jr.
87 CA 1690.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*219 Alan S. Fishbein, Baton Rouge, for Anne Golden Stewart.
Sylvia Roberts, Baton Rouge, for John Roberts Stewart, Jr.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
In this action, the father appeals the trial court judgment changing the consent judgment of joint custody to sole custody in favor of the mother.

FACTS
John Stewart, Jr. (hereinafter Mr. Stewart), the father, and Anne Golden Stewart Duke (hereinafter Mrs. Duke), the mother, were married on January 8, 1977. Their child, Christian (Chris) Stewart, was born on July 12, 1983. On August 30, 1984, the parties physically separated. Mrs. Duke filed a petition for separation on October 24, 1984; on November 28, 1984, the separation was granted based on mutual fault, and a stipulated judgment was submitted whereby the parties would share joint custody of Chris and would each have physical custody of him on an alternating weekly basis, alternating major holidays; neither parent requested nor was named the domiciliary parent. Mr. Stewart was to pay $200 per month in child support, and was to share on a fifty-fifty basis the cost for the child's food, education, daycare, nursery, and out of pocket dental and medical bills not covered by insurance; Mrs. Duke was to maintain medical insurance on Chris. A judgment of divorce, granted on July 8, 1985, continued the provisions of the separation with respect to the custody and child support.[1]
*220 Mr. Stewart remarried, to Inessa Stewart, on February 1, 1986; Mrs. Duke married Jack Duke on October 6, 1985. On July 16, 1987, Mrs. Duke, through her attorney, David LeCiere, notified Mr. Stewart that she, Mr. Duke, and Chris intended to move to Montgomery, Alabama, before September 1, 1987. Mr. Duke had received a job promotion which entailed a transfer to Alabama. On July 17, 1987, Mr. Stewart filed a petition seeking a change in the custody agreement to sole custody in favor of himself; Mrs. Duke reconvened seeking sole custody.
On September 2, 1987, after hearing testimony and taking evidence, the court rendered judgment dissolving the joint custody agreement and awarding sole custody to Mrs. Duke. The reasons were as follows:
The Court considered the testimony and evidence and after long and difficult deliberation believes it is in the best interest of the child to be in the sole custody of the mother. The acrimony between the parents is too great to award joint custody. The Court, however, believes that either home is more than suitable, that Mr. and Mrs. Stewart and Mr. and Mrs. Duke are fit parents and love the child dearly. Therefore, the restraining order is vacated and the parties are ordered to submit a liberal visitation schedule by September 25, 1987 or the Court, upon notice, shall formulate a plan.
From this judgment, Mr. Stewart appeals, urging four assignments of error, which read as follows:
1. The trial court abused its discretion by failing to apply the rule that in change of custody cases stability and continuity must be considered as primary factors in determining that a change is in the best interest of the child.
2. The trial court's finding that appellee should be awarded custody of the minor child, which uproots the child from a stable, satisfactory environment here in Baton Rouge based solely on the trial court's finding of acrimony between two fit parents, should be reversed as an abuse of the court's discretion.
3. Since the trial court failed to require appellee as the departing parent, to prove that dislocation of the child to Alabama was in the child's best interest, the judgment below constitutes an abuse of discretion.
4. Since the trial court in its judgment and reasons therefor, failed to articulate a rationale in accordance with the prevailing jurisprudence, i.e., that the change it ordered necessitating dislocation of the child was in the best interest of the child, and instead pitched its decision entirely on a finding of acrimony between the parents, the decision below is not entitled to the usual deference accorded decisions of the trier of fact, and should be reversed.

JOINT CUSTODY
Mr. Stewart apparently is not appealing the trial court's termination of the joint custody, although Mrs. Duke has briefed this issue. Mr. Stewart does contend that the trial court based its decision to award sole custody to Mrs. Duke on the acrimony between the parties. This is not correct; the acrimony was the basis of the termination of the joint custody, but it was not the basis of the award of custody to Mrs. Duke.
Out of an abundance of caution, we note that we agree with the trial court's termination of the joint custody. The great acrimony between the parties is readily apparent even from a reading of the cold record. Mrs. Duke refuses to communicate with her husband because she says he makes her so angry; she and Mr. Stewart use Mr. Duke as a liaison to arrange matters for Chris. Mrs. Duke made the decision to take the child with her and Mr. Duke to Montgomery unilaterally, then had her attorney notify Mr. Stewart of this decision; she was not willing to work out any alternate arrangement, and only wanted to negotiate a visitation schedule with Mr. Stewart *221 Subsequently, she cancelled Chris's longstanding enrollment at St. James Episcopal Day School without consulting Mr. Stewart In July of 1986, when the Dukes were picking up the child following his week with the Stewarts, the parties engaged in a heated argument causing the child to burst into tears and become frightened.
The parties disagree as to Chris' hygiene, with Mr. Stewart becoming irritated if his four year old son's fingernails are slightly dirty or if his hair is too long when he picks him up from Mrs. Duke. Mr. Stewart also was unhappy with the clothing Mrs. Duke provided for Chris. The child also has allergies, sinus problems, and asthma; the parties disagree on the proper medical care for Chris, with Mr. Stewart giving the child medicine whenever any problem appears, and Mrs. Duke giving the child medicine more sparingly.
We believe that these disputes will only increase in number and severity once the Dukes move due to the distance between the parties. The presumption that joint custody is in the best interest of the child does not exist when one of the parents moves out of the state. LSA-C.C. art. 146; Key v. Key, 519 So.2d 319, 323 (La. App.2d Cir.1988). While a great distance between the parents is not an absolute bar to joint custody, in this case the distance coupled with the animosity between the parties is sufficient to rebut the presumption that joint custody is in the best interest of the child. See Eismrth v. Eiswirth, 500 So.2d 817 (La.App. 1st Cir.1986), writ denied, 502 So.2d 111 (La.1987). We find the trial court was correct in dissolving the joint custody decree.

SOLE CUSTODY TO MRS. DUKE
Both parties sought to change the custody of Chris from the joint custody arrangement of alternating weeks to sole custody for either Mr. Stewart or Mrs. Duke. Because the original joint custody plan was a stipulated judgment, and not a considered decree, the "heavy burden" rule set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), does not apply. Risher v. Risher, 511 So.2d 1220, 1222 (La.App. 2d Cir.1987). The rule to be applied is the best interest of the child. Bridgers v. Bridgers, 509 So.2d 793 (La.App. 1st Cir. 1987).
The trial court did not explain in her reasons for judgment the basis of her decision that it was in the best interests of the child that sole custody be awarded to Mrs. Duke. Mr. Stewart's main contention is that since he has participated equally in Chris' upbringing due to the parties' unique custody arrangement, the stability and continuity of the child's life in Baton Rouge will be disrupted by the Alabama move. Mrs. Duke argues that Chris is more closely "bonded" to her and Mr. Duke, and thus, Chris should go to Alabama with them.
The record shows that Chris has lived in Baton Rouge since birth; that he has lived with each parent on an alternating weekly basis since they separated; that he has many friends and relatives in South Louisiana with his paternal grandmother in Lake Charles and his maternal grandparents in New Orleans; that he has attended Presbyterian Day Care in Baton Rouge; that he was enrolled since infancy and was accepted to attend pre-kindergarten at St. James Episcopal Day School; that he has been a member of St James Episcopal Church since birth; that he has health problems such as allergies and asthma and that his pediatrician and allergist are in Baton Rouge; that the Stewarts are active members of St. James Episcopal Church; that the Stewarts have no intention of leaving Baton Rouge; that the Alabama move might only be for four or five years, whereupon Mr. Duke may return to Baton Rouge; that Mr. Duke is moving to Alabama to accept a promotion as well as a pay raise from $25,000 to $32,000; that the Dukes have never lived in Montgomery; that Mrs. Duke has no relatives in Montgomery, Alabama; that she has two friends there; that she had selected a private school, Greengate Private School (non-Episcopalian) to enroll Chris in; that she and Mr. Duke were going to purchase a home in a neighborhood which appeared to *222 have many children, with a school nearby to which Chris could walk; that she had not located any doctors yet for Chris. In response to Mr. Stewart's attorney's question as to what was better for Chris "in Montgomery than in Baton Rouge other than you being there," Mrs. Duke testified as follows:
Okay. Number one, there is no industry there. You don't have the air pollution. There is no moderate or or hazardous range in air pollution in Montgomery, Alabama. There is no industry there. The water is decent. You can drink it. It is not right in the cancer corridor. The home that we are going to purchase is a brand new home. With many children every house just about had biccyles [sic], tricycles, toys, pools, swing sets. You know. They have a wonderful public school system. In the neighborhood that we intend to buy Christian can walk to school which is something that he can not do here in Baton Rouge. In fact, very few of those children I am sure in St. James live in the neighborhood that he lives in; so at least he will have a peer group within his neighborhood.
Mrs. Duke called Fred Tuton, a clinical psychologist, to testify as to Chris' emotional bonds. Mr. Tuton testified that he was asked to evaluate to whom the child was bonded; that the child bonds more to the parent whom he feels is meeting his basic emotional needs more closely; that he administered the Kinetic Family Drawing Test; that the test takes about fifteen minutes and requires the child to draw his family; that Chris drew a man, a woman, and two children; that Chris identified these people as Mrs. Duke, "Da" (Chris calls Mr. Duke "Da"), and a brother and sister whom he would like to have; that for bonding it is not the amount of time the child spends with a parent which is important, but rather the quality of the time.
When Mr. Tuton was cross-examined, he testified that he only saw Chris for one interview for a one hour period; that he was only asked to give an opinion as to bonding and not as to who should get custody of Chris; that the Kinetic Family Drawing test only took fifteen minutes; that he did not interview Mr. or Mrs. Stewart; that he was not aware of the alternating week custody arrangement; that in Mr. Tuton's experience, complete evaluation of all parties involved usually supports the conclusions reached from the Kinetic Family Drawing Test; that in Mr. Tuton's experience, the results of the drawing test are not affected by which parent brings the child in for testing (Mrs. Duke brought Chris in); that the test does not prove that Chris is not bonded to Mr. Stewart, rather the test shows that relatively, Chris is more bonded to the mother; that Chris did not mention his father in Mr. Tuton's interview; that Chris was excited about the Alabama move; and that the stress in moving from a familiar situation can be lessened by properly preparing the child, but that there will be some stress.
The record shows that Mr. Stewart has had custody of Chris every other week since he was approximately one year old; that he arranged day care for Chris; that he took Chris to his first dental appointment; that he took Chris to his doctors; that he took Chris to school; that he took Chris for haircuts; that he purchased clothes for Chris; that even prior to he and Mrs. Duke's separation, he helped feed, bathe, clothe and clean up Chris; that he participates in many activities with Chris, such as driving him to school, taking him to exhibits, playing with Chris' toys together, reading books at bedtime, going to the health club together, and fishing. Mrs. Stewart testified that she is self-employed and thus has a flexible work schedule; that she helps Mr. Stewart with Chris all she can; that she has a good relationship with Chris; and that she was willing to have Chris with them full time.
Mrs. Duke testified that she and Chris had a good relationship; that Mr. Duke and Chris are close; that Chris calls Mr. Duke "Da"; and that she reads to him nightly. Mr. Duke testified that he participated in activities with Chris such as playing cowboys, fishing, and golfing.
As far as the remaining factors set forth in LSA-C.C. art. 146 to be considered in *223 determining what is in the best interest of the child, the parties are equal. An examination of the record shows that both parties are financially capable of providing for the child's material needs; that both parties are raising the child in their Episcopalian creed; that both parties recognize that while the child has a step-parent in each household, that a close and continuing parent-child relationship must be maintained between the child and his natural parents; that both parties are mentally and physically healthy;[2] and that both parties are able to give the child love, affection, and guidance.
The trial court's discretion in custody cases is entitled to great weight, and should not be disturbed unless it amounts to a clear abuse of discretion. Cassidy v. Cassidy, 514 So.2d 1198, 1200 (La.App. 1st Cir.1987). Where one parent is attempting to remove the child from the court's jurisdiction, as is Mrs. Duke in the case sub judice, that parent must show that there is good reason for the move and that the move is in the child's best interest. Sandifer v. Sandifer, 514 So.2d 510, 513 (La.App. 3d Cir.1987), citing Griffin v. Griffin, 424 So.2d 1228 (La.App. 1st Cir.1982).
In this case, there is no dispute that there is a good reason for the move: Mr. Duke is accepting a promotional transfer with a salary increase. The dispute centers around whether the move is in Chris' best interest. The trial court, although not stating this in its reasons for judgment, obviously awarded sole custody to Mrs. Duke, because same was in Chris' best interest. Thus, it follows that the move was also in Chris' best interest because it enabled Chris to remain with his mother.
We can not say that the trial court abused its discretion in awarding sole custody to Mrs. Duke. This was a difficult case and the trial judge made a hard decision. In our review of the jurisprudence dealing with the situation where one parent moves from the court's jurisdiction, we discovered most, but not all, of those cases favored the remaining parent. See Key v. Key, supra; Ezell v. Kelley, 513 So.2d 454 (La.App. 2d Cir.1987); Risher v. Risher, 511 So.2d 1220 (La.App. 2d Cir.1987); Sandifer, supra; Sambola v. Sambola, 493 So.2d 206 (La.App. 5th Cir.1986); Bezou v. Bezou, 436 So.2d 592 (La.App. 4th Cir. 1983); Quinn v. Quinn, 412 So.2d 649 (La.App. 2d Cir.), writs denied, 415 So.2d 941, 945 (La.1982). One First Circuit case, Griffin, supra, did allow the moving parent to take the child with her, unlike the forementioned cases wherein the courts did not allow the moving parents to take the children with them. However, we find these cases factually distinguishable from this matter. We agree with the trial court that it is in Chris' best interest to be in the custody of Mrs. Duke. While Mr. Stewart's involvement with his son's life is regrettably impaired, we note that the trial judge in her reasons ordered the parties to formulate a liberal visitation schedule for Mr. Stewart.
For the above and foregoing reasons the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] On July 18, 1986, Mr. stewart filed a rule to modify child support. The parties agreed that Mr. Stewart's child support obligations would be terminated and that each party would provide for Chris' clothing needs. Mrs. Duke agreed to continue to provide medical insurance coverage for Chris and Mr. Stewart was to be responsible for all medical expenses not covered by insurance.
[2] Mrs. Duke testified that Mr. Stewart had a drinking problem and that he beat her. She presented no proof in support of these allegations other than her testimony. Mr. Stewart testified that he never had a drinking problem, nor did he beat Mrw. Stewart. We find these allegations have no merit.