598 So.2d 694 (1992)
Timothy Moise MELANCON, Plaintiff-Appellant,
v.
Melanie Marie BERGERON, Defendant-Appellee.
No. 90-1217.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
Morrow, Morrow, Ryan & Bassett, Patrick C. Morrow, Opelousas, for plaintiff-appellant.
Olivier & Brinkhaus, John L. Olivier, Sunset, for defendant-appellee.
Before STOKER and YELVERTON, JJ., and WILLIAM A. CULPEPPER[*], J. Pro Tem.
*695 WILLIAM A. CULPEPPER, Judge Pro Tem.
This is a child custody case. The child involved is Bradford James Melancon, who was seven years old at the time of trial. The district judge awarded joint custody to the parents, with the mother, Melanie Marie Bergeron, as the domiciliary parent. The father, Timothy Moise Melancon, appealed seeking sole custody or in the alternative joint custody with him as domiciliary parent.
The record shows that Timothy Melancon and Melanie Bergeron were married on December 14, 1982. A child, Brad, was born of the marriage on July 20, 1983. Timothy filed a suit for separation on May 3, 1984, alleging abandonment. He prayed that custody of the child be given to the mother, while reserving his right to seek joint custody in the future. Melanie answered, alleging physical abuse and heavy drinking on the part of Timothy.
Prior to a hearing on custody and support, they attempted a reconciliation, but it was unsuccessful. Melanie, in a supplemental answer, asked for custody, alimony and child support. Prior to the rule Timothy filed a supplemental petition for custody. On August 22, 1984, the court issued reasons and ordered joint custody. It ordered $100.00 per month child support and gave Timothy and Melanie alternating weeks of custody until plans of joint custody were adopted. Custody plans were submitted, but no hearing was held to consider them.
On January 28, 1985 Timothy amended his petition to ask for a separation on the grounds of living separate and apart. On July 29, 1986, Timothy secured a divorce, and by agreement between the parties, the custody of the child was assigned to Melanie. The divorce decree also awarded $50.00 per month child support, with an agreement that Timothy contribute more in the event he becomes gainfully employed.
After the divorce, Melanie and Brad moved to Virginia. Shortly thereafter, Melanie began living in open concubinage with Mike, her boyfriend. They have continued to live together, and as of the trial, there had been no marriage, despite a child being born of the relationship. Timothy remarried on November 25, 1987 and had another son by the second wife.
On July 13, 1990 Timothy filed a rule for change of custody, and alternatively for joint custody and child support. After hearing the evidence, the trial court decreed there be joint custody, with Melanie as custodial parent.

TRIAL COURT RELIANCE ON MATERNAL PREFERENCE
The trial court in its reasons for judgment stated: "Following the dictates of Stelly v. Montgomery, 339 So.2d 956 (La. App. 3 Cir.1977) and 347 So.2d 1145 (La. 1977), the husband is denied custody." The appellant argues that Montgomery is inapplicable to the case at bar. We agree.
The principal issue in Montgomery was whether a wife could sue her husband by writ of habeas corpus to award her custody of their minor children while the marriage was continuing and there was no pending suit for separation or divorce. The Louisiana Supreme Court, in a four to three decision, held the wife was not barred from bringing suit.
The Supreme Court also granted custody to the mother, reasoning that "the best welfare of the children is served by leaving them in their mother's custody." The court cited Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) for this proposition. This point in Fulco is based on then C.C. arts. 146 and 157, which deal with child custody. At the time of Fulco these articles provided a maternal preference rule. The legislature has since suppressed any legal preference or presumption in favor of the mother in custody disputes. In 1981, the legislature amended C.C. arts. 146 and 157 creating a preference for custody to be awarded to both parents jointly. (Art. 146 and 157 have since been redesignated as C.C. arts 131 and 134 pursuant to acts 1990, no. 1008, § 8, eff. Jan. 1, 1991, and acts 1990, no. 1009, § 10, eff. Jan. 1, 1991). As a result the father and mother stand on equal footing, and the role of the *696 court is to determine the best interest of the child based on the relative fitness and ability of the parents in all respects to care for the child. Accordingly, the trial court fell into error in following Montgomery.

PRIOR CUSTODY ORDER NOT A CONSIDERED DECREE
At the time of the divorce, both parties agreed that Melanie would have custody of Brad. No evidence was offered at the divorce hearing as to the moral fitness of either parent. In Simmons v. Simmons, 554 So.2d 238, 240 (La.App. 3 Cir.1989), this court stated:
An uncontested decree in which no evidence is presented as to the fitness of the parents is not a "considered decree". Bridgers v. Bridgers, 509 So.2d 793 (La. App. 1st Cir.1987). In the present case, the original custody decree at the time of divorce was a stipulated judgment and not a considered decree. Accordingly, the test applicable in this change of custody action is found in LSA-C.C. Arts. 146 and 157, and consists of what is in the best interest of the child. Dungan v. Dungan, 499 So.2d 149 (La.App. 2nd Cir. 1986); cf. also Miller v. St. Clergy, 535 So.2d 563 (La.App. 3rd Cir.1988).
Clearly, the custody decree in the instant case was by agreement, and as such was not a "considered decree." As a result, the "best interest of the child" standard found in C.C. art. 131 is applicable here.
Timothy argues the trial judge erred in refusing to award sole custody of the minor child to him, and further erred by designating Melanie as custodial parent in the joint custody award. As stated in Key v. Key, 519 So.2d 319 (La.App. 2 Cir.1988), whether the best interest of the children favors sole custody or favors a change in the designation of which parent shall be the domiciliary parent under a joint custody order, are two separate and distinct questions. We will address each question in turn.

SOLE CUSTODY
The father's brief on appeal contends that he should have been awarded sole custody of his son. LSA-C.C. art. 131 creates a rebuttable presumption that joint custody is in the best interest of the child. However, section K of art. 131 states there is no such presumption when one of the parents moves out of state. While the language only concerns the cessation of the presumption after an original joint custody decree has been made, its rationale should also apply when a parent moves out of state before a custody decree is rendered.
Clearly then, the presumption of joint custody did not exist. The absence of the presumption does not, however, direct that sole custody is mandated. Key, supra.
The trial court, despite the distance between the parents' residences, determined that joint custody was in the best interest of Brad. In Sambola v. Sambola, 493 So.2d 206 (La.App. 5 Cir.1986), the appeal court amended a trial court decision awarding sole custody of a minor child to his father, to joint custody, with the father as the custodial parent, even though the mother at that time lived in Indonesia and the father in Louisiana.
Under all of the circumstances, we cannot say the trial court's holding of joint custody was a clear abuse of discretion.

CHANGE IN DOMICILIARY PARENT
Again, whether the best interest of the child favors a change in the designation of which parent shall be the domiciliary parent under a joint custody order and whether or not there should be sole custody are two separate and distinct questions. Key, supra. The court must use the best interest of the child standard in either.
Under C.C. art. 131 D, "In making an award of physical custody, the court shall consider, among other things, the factors enumerated in paragraph (C)(2)." Therefore, the listed factors must be examined to determine if a change in the domiciliary parent from the mother to the father is warranted.
The following is a listing and discussion of factors in art. 131(C)(2) relevant to facts present in this case:

*697 (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
Brad testified at trial he did not go to church in Virginia, but would like to, and had asked his mother once or twice to bring him. Melanie claimed she could not because she had no vehicle for transportation, though it was brought out in trial that Mike, her paramour, had a truck and seldom worked on Sunday.
Timothy testified he goes to bible classes, and his wife attends church every Sunday.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
The trial judge in his reasons for judgment, noted that "the husband is struggling financially," and from the record this is undoubtedly true. However, the record reflects the economic situations of Timothy and Melanie are actually quite similar. Both depend on the assistance of others to sustain their families. Timothy currently runs a fish market owned by his father, and lives in a house owned by his father, often paying little or no rent. Timothy's wife makes a moderate contribution to the family's income by cleaning houses. Melanie, on the other hand, depends almost entirely on her paramour, Mike, for the financial support of Brad and herself. She earns approximately $135.00 a week caring for small children in her home. Were Mike to leave her, she would be placed in very necessitous circumstances.
So, in effect, both Timothy and Melanie rely heavily on others for their support: Melanie, on her paramour, and Timothy on his father. It is questionable which parent can best provide Brad with food, clothing and other necessities.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
For his entire life, other than the visitation periods with his father, seven year old Brad has lived with his mother. This is the continuity the factor above contemplates. However, this provision requires the environment be a stable and satisfactory one. Clearly it is not.
Brad's mother has lived in open concubinage with her boyfriend, Mike, for over three years. There was no testimony during trial demonstrating an intention to get married.
Furthermore, trial testimony indicated Mike has periodic outbursts of violence. Melanie testified Mike had kicked her "a few times," and that she once had to go to a neighbor's house to allow Mike to cool off following an argument. In fact, as she and Brad were leaving, Mike threw a brick and hit the car in which they were riding.
Melanie also testified that Mike smokes marijuana in the house, but she says never in the presence of the children. However, Brad testified he has seen Mike roll his own cigarettes, and then smoke them.
From the above facts, under even the most forgiving view, one would be hard pressed to refer to the environment Brad lives in as stable and satisfactory.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
As stated above, Melanie has lived in open concubinage with her boyfriend Mike for over three years, with no indication of marriage pending. This is not a family unit as contemplated by the factor above, because there is no permanence to Melanie and Mike's relationship. Mike is not Brad's step-father, but simply his mother's live-in boyfriend.
Timothy, since his divorce from Melanie, has remarried. The home he can offer Brad is one that has the family atmosphere this factor requires.
(e) The moral fitness of the parties involved.
The jurisprudence in Louisiana has consistently viewed with great disdain a mother living in open concubinage with her paramour. This court in Albarado v. Toler, 495 So.2d 355, 358 (La.App. 3 Cir.1986), summarized the jurisprudence as follows:

*698 Formerly, the courts of this state consistently followed the general rule that where a parent had recently lived in open and public adultery with a paramour for a substantial period of time, in total disregard of the moral principles of our society, the parent was morally unfit to maintain custody of children. Johnson v. Johnson, 268 So.2d 114 (La.App. 3rd Cir.1972); Kaufman v. Kaufman, 271 So.2d 629 (La.App. 1st Cir.1972); Beck v. Beck, 341 So.2d 580 (La.App. 2d Cir. 1977). The effects of this rule were softened by the "reformation rule" first adopted by the Louisiana Supreme Court in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). Under the reformation rule, when a parent reforms or abstains from any previous course of open indiscretion and probable immorality, the custody of children could be retained by that parent. Fulco v. Fulco, supra; Monsour v. Monsour, 347 So.2d 203 (La.1977); Cleeton v. Cleeton, 383 So.2d 1231 (La. 1979); Atteberry v. Atteberry, 379 So.2d 18 (La.App. 3rd Cir.1979) writ granted 381 So.2d 1231 (La.1980); Peters v. Peters, [449 So.2d 1372 (La.App. 2d Cir. 1984) ] supra; Clark v. Clark, [467 So.2d 627 (La.App. 3rd Cir.1985)] supra. Almost without exception where it appears that the parent lived with some one of the opposite sex to whom they were not married and that situation continued through trial of the custody proceeding, the courts have removed the child from the offending parent's custody. See Bagents v. Bagents, 419 So.2d 460 (La. 1982). In those cases where the offending parent had married the person with whom they were living or the relationship had been terminated prior to trial, the courts did not change the custody inasmuch as the circumstance which might adversely affect the child no longer existed. See Cleeton v. Cleeton, supra; Monsour v. Monsour, supra; Fulco v. Fulco, supra. In some cases where the offending parent married the paramour after trial, the appellate courts remanded the case to the trial court for a consideration of this fact. Atteberry v. Atteberry, 381 So.2d 1231 (La.1980); Shackleford v. Shackleford, 389 So.2d 825 (La.App. 3rd Cir.1980). In at least one case where it appeared that the offending parent had married the person with whom the condemned relationship had been conducted after the trial but prior to appellate review, the appellate court found that the trial judge did not err in awarding joint custody and affirmed. Peters v. Peters, supra.
Shackleford, supra, is very similar factually to the case at bar. In that case, the mother, by agreement, had custody of one of the five children, a nine year old boy, and the father had custody of the four older children. Approximately one year before the separation, the mother began an adulterous affair with another man. During the suit for divorce, the father sued for custody of the nine year old boy, but custody remained with the mother. The mother at the time of the divorce had already moved in with her lover. A child was born of the relationship. During this period, the nine year old boy lived in the same house with his mother and her lover. At the divorce hearing, the mother and her lover testified they loved each other, and planned to be married once the divorce was final. The father appealed the decision placing custody of the child with the mother.
This court reversed the custody decision of the trial court as a clear abuse of discretion, based entirely upon the fact that the mother was in "total disregard of the moral principles of our society," and as such was "morally unfit to maintain custody of her children." The court did remand to the district court for a new trial on the issue of custody of the child because of the "reformation" rule, because while testifying the mother and her lover expressed an intent to get married.
In the instant case there was no indication Melanie and her paramour intended to get married, and as such the "reformation" rule should play no factor in the decision here.
(h) The home, school and community record of the child.
Testimony revealed that Brad failed kindergarten. Each parent blames the other *699 for this failure, but considering that Brad was in his mother's custody during school, and over a thousand miles away from his father, it seems farfetched to blame Timothy for Brad's failure.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
At trial, the district judge allowed Brad to testify in open court with both parents present. While being questioned by the judge Brad stated he wanted to be with his mother and go to school, and visit his father for the summer.
The trial court has the discretion to place a child on the stand, but how much emphasis to place on a seven year old boy's preference to stay with a particular parent is a difficult question. The trial judge undoubtedly placed great emphasis on Brad's selection, as he specifically commented on it in his reasons for judgment.
In the case of Simmons v. Simmons, supra, this court held that a child's stated preference alone was insufficient to modify custody. In finding that the trial court placed undue emphasis on the child's preference to live with his father, this court stressed that C.C. arts. 146 and 157 (now 131 and 134) make it clear that there are a number of factors which the trial court must consider in making its determination.

CONCLUSION
In performing its function of deciding custody cases, the trial court is vested with a vast amount of discretion. Bagents v. Bagents, 419 So.2d 460 (La.1982). Although we are cognizant of this, we nevertheless find that the trial court abused its discretion in naming the mother as the domiciliary parent. In examining the factors of C.C. art. 131, we feel it is in the best interest of the minor child that the father be named the domiciliary parent.

DECREE
For the reasons stated, the judgment of the trial court granting joint custody is affirmed. The judgment naming the mother, Melanie Bergeron, as the domiciliary parent is reversed. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the father, Timothy Melancon, is recognized as the domiciliary parent of Bradford J. Melancon. We remand to the trial court to allow the litigants to implement a plan of joint custody and visitation by the mother and to determine the issue of child support. Costs are assessed equally to plaintiff and defendant.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.