535 So.2d 563 (1988)
Garland D. MILLER, Jr., Plaintiff-Appellee,
v.
Rosemary ST. CLERGY, Defendant-Appellant.
No. 87-1029.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1988.
*564 John W. Pickett, Many, for plaintiff-appellee.
Cooper, Thompson & Pierson, William H. Cooper, Baton Rouge, for defendant-appellant.
Before GUIDRY, FORET and KNOLL, JJ.
GUIDRY, Judge.
This is a child custody case. The father, Garland D. Miller, Jr., brought a rule to modify the provisions of the joint custody decree then in force, seeking to further limit the periods of physical custody enjoyed by the mother, of their three and one-half year old minor son, Garland Dupre Miller, III (Trey). The mother answered the rule seeking increased periods of physical custody. The trial judge reduced the defendant's monthly physical custody from ten days per month to seven days per month. Both parties appealed.
The parties to this proceeding are medical doctors. Drs. Miller and St. Clergy met and were married while in medical school. Their son, Trey, was born approximately six weeks before Dr. St. Clergy completed her studies and while the couple was legally separated. They were divorced by a judgment of the First Judicial District Court rendered November 14, 1985. On that same day, Judge Eugene Bryson, Jr. rendered a judgment implementing a plan for joint custody (Appendix 1) which basically provided for Dr. Miller to have physical custody of Trey for 20 days per month and Dr. St. Clergy for 10 days per month.
On February 25, 1987, Dr. Miller filed a rule in the Eleventh Judicial District Court, Sabine Parish, Louisiana, seeking to modify the joint custody decree of November 14, 1985. In his petition, Dr. Miller alleged that "... the plan for joint custody has not proved to be a workable arrangement in that a substantial portion of this time [defendant's physical custody of ten days per month] is not being used by defendant herein for visitation with the hereinabove named minor ... [and] ... that it is in the best interest of this child ... that changes in the monthly visitation period be modified...". Dr. St. Clergy answered Dr. Miller's petition, denied his allegations and prayed that the custody plan be modified "... in order to enable her to spend more time with her son as ... it would ... be in his best interest that more time be spent with his mother".
At trial only two witnesses testified, Dr. Garland D. Miller and Dr. Rosemary St. Clergy. Essentially, there is no conflict in their testimonies. We briefly summarize the essence of same. Since his divorce from Dr. St. Clergy, Dr. Miller has remarried and now has a six year old step-daughter and a four month old daughter as well as three year old Trey. Dr. Miller practices in Zwolle where he maintains a nursery for the three children at his office. Dr. Miller claimed that Trey's behavior has deteriorated in the past six months in that when he returns from visits with his mother, he is more selfish, self-centered and unwilling to share with his sisters.[1]
Dr. St. Clergy lives in Baton Rouge where she is and has been in medical residency. Her parents, who live in Marksville, provide transportation for Trey to and from his visitation periods with his mother. *565 Because of their ages (64 and 62) and Mr. St. Clergy's ill health, they cannot comfortably make the trip from their home in Marksville to Zwolle, to pick up Trey, and then on to Baton Rouge in one day. Therefore, their routine has been as follows. They pick up their grandson at 3:00 p.m. on Friday and return to their home in Marksville in time for supper on Friday evening. Then, unless Dr. St. Clergy's schedule dictates otherwise, they proceed to Baton Rouge on Saturday morning. The return trip calls for leaving Baton Rouge on Sunday for Marksville, an overnight stay in Marksville on Sunday night, and, a return to Zwolle on Monday.
Dr. St. Clergy testified that she was finishing her residency at Earl K. Long Hospital at the time of the trial of this rule and expected to enter private practice in July 1987. She urged that when she completed her medical residency, she would have more free time to spend with Trey and therefore her visitation should be increased. She stated that she enjoyed the prolonged visitation period with her son and saw nothing wrong with sharing that time with her parents. She further stated that she should be given equal custodial time with her former husband while their son was not yet of school age and such an arrangement was still feasible.
Dr. Miller countered by offering to transport Trey from Zwolle to Baton Rouge. He stated that the trip would take approximately four hours and that if the court reduced Dr. St. Clergy's visitation periods to the weekends only, with Dr. Miller providing the transportation, Dr. St. Clergy would enjoy the same total visitation as before.
The present rule was filed in February 1987, some five months after the finality of the Louisiana Supreme Court's judgment in Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986). Accordingly, the burden of proof rule enunciated therein which must be borne by a party seeking modification of a custody decree applies. That rule states:
"... When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. See Bankston v. Bankston, 355 So.2d 58 (La. App. 2d Cir.1978); Languirand v. Languirand, 350 So.2d 973 (La.App. 2d Cir. 1977). Cf. Unif. Marriage and Divorce Act, 9A U.L.A. § 409 (1979)...."
Bergeron, supra, at page 1200.
In Bergeron, Justice Dennis, as organ of the court, in response to the argument that the 1977 amendment of Civil Code article 157 combined with the passage of the Joint Custody Law of 1982 (La.Acts No. 307, 1982) abrogated all but "the best interest of the child" rule in custody cases, went on to explain:
"... We find no evidence that this law abrogated the change of circumstances requirement, the burden of proof rule or the appellate review standard.
. . . . .
... [A]s we construe both Sections E and F of Article 146, in light of the entire statute and the history of this legislation, the option of joint custody is always available if it is in the best interests of the child, but because the best interest of the child principle was adopted from the jurisprudence without any intention of disturbing the gender neutral decisional precepts or the courts' freedom within the civilian tradition to interpret and implement the principle, the change of circumstances rule, the heavy burden rule, and the appellate review standard apply to any petition to modify custody, regardless of whether it is joint or sole custody."
Bergeron, supra, at pages 1200 and 1203.
The trial judge, in his reasons for judgment, articulated no change of circumstance, no deleterious circumstance, no advantage to the child, nor any other reason for his ruling. Our examination of the record reveals no compelling reason to alter the custody decree of November 1985. Neither party carried the heavy burden of proof mandated by Bergeron, to justify a modification of the existing custody decree.
*566 We have assumed that the custody decree rendered November 14, 1985 was a considered decree because the record fails to reflect otherwise. However, even if such was not the case, our conclusion would be the same. The child, Trey, has been on the same schedule of visitation for some time. During those periods, he has had the benefit of the love and affection of not only his mother and father, but also of his maternal grandparents. We are of the opinion it would be in the best interest of the child to continue these relationships. Further, as found by the trial court, both natural parents genuinely love and are deeply concerned about their child's welfare. To shorten the mother's term of physical custody at a time when the child is not yet of school age and when the professional demands on the mother's time have lessened would not be in the child's best interest.
Finally, we note that neither party sought to change that portion of the judgment appealed from which obligates Dr. Miller to provide transportation for Trey to and from the residence of Dr. St. Clergy. This being the case, we will not disturb that portion of the judgment rendered July 15, 1987. In all other respects, the judgment appealed from is annulled, reversed and set aside and the joint custody decree of November 14, 1985, is reinstated, subject only to the change that transportation for the child to and from the residence of Dr. St. Clergy will be provided by Dr. Miller. All costs of this litigation at both trial and appellate levels are to be borne by Dr. Garland D. Miller, Jr.
AFFIRMED IN PART; REVERSED IN PART; AND, RENDERED.

7

APPENDIX 1

SUIT NUMBER: 305,851

FIRST JUDICIAL DISTRICT COURT

CADDO PARISH, LOUISIANA

IMPLEMENTATION PLAN FOR JOINT CUSTODY
A. LEGAL CUSTODY:
The parties, Garland Dupre Miller, Jr. ("Garland") and Rosemary St. Clergy Miller ("Rosemary"), shall have joint legal custody of the minor child, Garland Dupre Miller, III ("Trey").
B. LEGAL DOMICILE OF CHILDREN:
The legal domicile of Trey shall be at the residence of Garland and Garland shall be the domiliciary parent of Trey.
C. PHYSICAL CUSTODY:
Garland shall enjoy the physical custody of Trey except as set forth in this implementation plan of joint custody, as follows:
1. Rosemary will have physical custody of Trey for one 10-day period each month commencing at 3:00 p.m. on the second Friday of each month and ending at 3:00 p.m. on the second Monday thereafter, except as provided in Paragraph 2(D)(1) and (2), and; except, in either the months of June, July, or August, Rosemary shall have physical custody for 21 consecutive days in that month, commencing on the second Friday of that month. Rosemary shall advise Garland by May 1 of each year which month she desires to exercise the 21 consecutive days of physical custody.
2. The parents shall alternate physical custody on the following major holidays, as follows:
A. In even-numbered years, commencing with the year 1986, Rosemary shall have physical custody during the Easter holiday and Christmas holiday, as defined herein.
B. In even-numbered years, commencing with the year 1986, Garland shall have physical custody during Trey's birthday holiday and Thanksgiving holiday, as defined herein.
C. In odd-numbered years, commencing with the year 1987, Rosemary shall have physical custody during Trey's birthday holiday of the child and the Thanksgiving holiday.
D. In odd-numbered years, commencing with the year 1987, Garland shall *567 have physical custody during the Easter holiday and the Christmas holiday.
(1) In the months in which Rosemary has the physical custody of Trey on a holiday listed above, her 10-day period of physical custody for that month in which the day of the holiday falls shall commence at 3:00 p.m. five (5) days before the holiday and shall end at 3:00 p.m. five (5) days after the holiday.
8
(2) In the months in which Garland has the physical custody of Trey on a holiday listed above, the 10-day monthly physical custody period of Rosemary shall not be during the holiday period of Garland as defined above, but shall be the 10 day period immediately prior to the commencement of Garland's holiday period.
E. Notwithstanding the above holiday schedule, the modified holiday periods for the year 1985 shall be as follows:
(1) Rosemary shall have physical custody of Trey for the period commencing at 3:00 p.m. on November 15 and ending at 3:00 p.m. on November 25.
(2) Rosemary shall have physical custody of Trey for the period commencing at 3:00 p.m. on December 13 and ending at 3:00 p.m. on December 23.
D. JOINT DECISION MAKING:
Except as provided herein, Trey shall be subject to rules and regulations as agreed upon by the parents.
The parents are to communicate as needed. Communications shall include all factors affecting the welfare of Trey. Each parent shall supply the other parent with current business and residence phone numbers and address or other phone numbers at which the child may be contacted. Each parent shall have reasonable telephone access to the child.
Each parent is to maintain sufficient flexibility to allow for variations made necessary by the ebb and flow of social, educational, and recreational life.
Each parent shall transfer to the other sufficient wardrobe for the child considering the season.
All information regarding school, report cards, conferences, trips, functions, meetings, etc. will be furnished to the other parent as either one of them receives such information. All medical and other information regarding the child's health and welfare will be furnished to the other parent as either parent receives same. The above types of information must be exchanged by the parents and discussed accordingly. The parents shall not communicate through Trey, or third parties, or use Trey, because they refuse to communicate.
Each parent must not ignore the authority and input of the other by the failure to communicate or use Trey to inform each other of decisions on important matters.

9
E. TRANSPORTATION:
Rosemary, or a responsible party representing her, shall pick up and return Trey to Garland's medical office in Zwolle, Louisiana.
Each parent is responsible for transportation of the child while in physical custody of that parent.
F. MEDICAL AND DENTAL:
Each parent shall maintain health care insurance for Trey.
G. TUTORSHIP:
The parents shall be the natural co-tutors of the child in accordance with Article 250 and 258 of the Louisiana Civil Code.
H. PROPERTY OF THE CHILD
The mother and the father shall have the co-administration of the property of the child provided by Article 4262 of the Louisiana Civil Procedure Code.
I. ACUTE ILLNESS:
In the event of serious acute illness, each parent shall afford reasonable visitation to the other upon request.
*568 J. CHILD SUPPORT:
Each parent assumes the obligation of support for Trey during the period that each has physical custody of the child.
 November 14, 1985.
 /s/EUGENE W. BRYSON, JR.
 DISTRICT JUDGE
APPROVED AS TO CONTENT AND FORM:
ROSEMARY ST. CLERGY
ROSEMARY ST. CLERGY MILLER
________________________________________
DAVID A. SHEFFIELD
ATTORNEY FOR ROSEMARY ST. CLERGY
MILLER
________________________________________
GARLAND DUPRE MILLER, JR.
________________________________________
KENNETH RIGBYATTORNEY FOR
GARLAND DUPRE MILLER, JR.
________________________________________
B. WOODROW NESBITT, JR.ATTORNEY
FOR GARLAND DUPRE MILLER,
JR.
NOTES
[1] This conduct does not seem out of character for a three year old from an "only child" setting to a setting where he is just one of three children.