554 So.2d 238 (1989)
Martha Autrey SIMMONS, Plaintiff-Appellant,
v.
Reuben J. SIMMONS, Defendant-Appellee.
No. 88-889.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1989.
*239 Thomas G. Wilson, Colfax, for plaintiff-appellant.
Gregory N. Wampler, Colfax, for defendant-appellee.
Before GUIDRY and KNOLL, JJ., and ROBERTS[*], J. Pro Tem.
KNOLL, Judge.
Martha A. Simmons, the mother, appeals the modification of a joint custody decree awarding Reuben J. Simmons, the father, the sole custody of their son, Randy, who is nine years of age.
Martha and Reuben were married in 1965 and physically separated on or about May 10, 1986. Though the record is not exactly clear, it seems that the two minor children, Kathryn, 16 years of age, and Randy, lived with Martha during the time that the parents were physically separated, but sometime during that time Kathryn lived with Reuben.
The record also shows that Martha initiated the divorce action on July 24, 1987, alleging that she and Reuben had lived separate and apart without reconciliation for over a year, and that it was in the best interest of the minor children to continue the joint custody plan[1] wherein she is the domiciliary parent of the children, subject to Reuben's right to visitation. Although *240 Reuben initially filed an answer to the divorce action, admitting this allegation, at the divorce hearing, Martha agreed to retain only the custody of Randy and let Kathryn, now 17 years of age, live with Reuben; there was no contested hearing on the issue of the fitness of Martha and Reuben to continue the custody of the children respectively living with them. Accordingly, the judgment of divorce dated November 23, 1987, named Reuben as the domiciliary parent of Kathryn and Martha as the domiciliary parent of Randy.
On December 10, 1987, a little over two weeks after the divorce, Reuben filed a rule nisi, seeking the sole custody of Randy on the general allegation that there had been a change of circumstances since the judgment of divorce. At the hearing, the trial court permitted an enlargement of the pleadings, without objection, to encompass testimony of Martha's moral unfitness.
In written reasons, the trial court ruled that it was in Randy's best interest to live with his father because Martha had a live-in boyfriend, and Reuben could better meet the child's needs.
Shortly after the trial court's ruling, Martha married her paramour and filed a motion for a new trial, contending that the trial court misconstrued the evidence at the original hearing and, even assuming the truthfulness of those facts for the purpose of argument, the trial court should favorably consider her remarriage in determining what was in Randy's best interest.
The trial court held a hearing on Martha's motion for new trial. At that time the trial court interviewed Randy in chambers without the attorneys present, and again in open court with only the attorneys present. On both occasions Randy expressed a desire to live with his father. The trial court ruled that, taking into consideration Randy's desire to live with his father and the evidence of both hearings, the best interest of the minor child would be served by awarding custody to the father.
On appeal, Martha contends that the trial court erred: (1) because Reuben, the moving party on this rule to change custody, failed to prove that Martha was morally unfit to continue as the domiciliary parent of their minor son; (2) even assuming that the father proved she was morally unfit, he failed to establish that the immorality had a deleterious effect on their son since she was now married; and, (3) in considering the minor child's preference. For the following reasons, we reverse.

CHANGE OF CUSTODY
Martha, citing Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), contends that the trial court erroneously found that Reuben carried his burden of proving that her conduct justified a change of circumstances sufficient to remove custody of Randy. She further argues that the trial court erred when it faulted her for failing to testify at the original hearing and introducing no evidence to rebut Reuben's contentions.
Initially, we find that the heavy burden of proof enunciated in Bergeron is inapplicable to the case sub judice. An uncontested decree in which no evidence is presented as to the fitness of the parents is not a "considered decree". Bridgers v. Bridgers, 509 So.2d 793 (La.App. 1st Cir. 1987). In the present case, the original custody decree at the time of divorce was a stipulated judgment and not a considered decree. Accordingly, the test applicable in this change of custody action is found in LSA-C.C. Arts. 146 and 157, and consists of what is in the best interest of the child. Dungan v. Dungan, 499 So.2d 149 (La. App.2nd Cir.1986); cf. also Miller v. St. Clergy, 535 So.2d 563 (La.App. 3rd Cir. 1988).
In Owen v. Gallien, 477 So.2d 1240 (La. App. 3rd Cir.1985), we stated at page 1244:
"The best interest of the children is the sole criterion in a change of custody case. In determining what is in the best interest of the children, courts must examine all relevant facts. These include, but are not limited to, stability of environment, the standard of living each parent can provide, and the prior history of the children's custody. Further, it is settled *241 that the father and the mother stand on equal footing at the outset of child custody proceedings and the role of the court is to determine the best interest of the children based on the relative fitness and ability of the competing parents in all respects to care for the children. Finally, under our law, joint custody is presumed to be the preferred custodial arrangement.
In light of the above, the children are the real parties at interest in a custody proceeding and the sole issue to be decided is what custodial arrangement will serve their best interest. A determination of this issue can and should not be made until all evidence has been adduced which bears upon the relative fitness and ability of competing parents in all respects to care for the children. Thus, it can be concluded that, because of the unique nature of such proceedings, irrespective of whether an initial award of custody is involved or a change of custody is sought, the competing parties share equally the burden of establishing by a preponderance of the evidence the custodial arrangement which will best serve the interest of the children." (Citations omitted.)
In Turner v. Turner, 455 So.2d 1374 (La.1984), the Supreme Court at page 1379 stated:
"... [LSA-C.C. Art. 146(C)] clearly provides that there is only a presumption in favor of joint custody, and that it may be rebutted upon a proper showing that a different arrangement is in the child's best interest. Such a showing now must include a consideration of eleven specific, enumerated factors, plus any `other factor' which the trial court deems to be relevant. Article 146 provides further that `the burden of proof that joint custody would not be in the child's best interest shall be on the parent requesting sole custody.' This provision does not create any extraordinary burden on the party requesting sole custody.
As in any matter in which there is a rebuttable presumption, the burden rests with the party challenging the presumption to convince the fact-finder that his proposed conclusion is more correct than the presumed one. A presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary....
The article 146 presumption only compels the judge to award joint custody in those cases where other things are equal; or where there is insufficient evidence to rebut the presumption; or whenever neither parent alone would be able to manage a sole custody arrangement, and where it cannot be shown that it would be detrimental to the child to remain in parental custody. Effectively, the presumption only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion. In such a case, it becomes necessary for the other party to reestablish the propriety of the presumption's conclusion." (Footnotes and citations omitted.)
In the present case, Reuben not only sought a modification of the custody decree, but also the termination of joint custody incorporated in the judgment of divorce. As pointed out in Key v. Key, 519 So.2d 319 (La.App. 2nd Cir.1988), whether the best interest of the children, on the one hand, favors sole custody and, on the other hand, favors a change in the designation of which parent shall be the domiciliary parent, however, are two separate and distinct questions. For reasons which follow, we agree with Martha's contention that Reuben failed to prove by a preponderance of the evidence that a modification of the custody decree was required and that it was not in the best interest of Randy to continue joint custody.
From the record we glean the following summary of the testimony presented to the trial court at the original hearing on Reuben's rule to change custody. Kathryn, Martha's seventeen year old daughter, testified about an overnight liaison her mother had six months prior to the judgment of divorce with Rocky Atwell in the family home. She testified that Atwell was *242 in the family home during the evening, and that at approximately 3 a.m. she went to her mother's bedroom, but was denied access. At that time, Kathryn observed Atwell's truck still parked at their home.
Evyonne Allen, Martha's older daughter, and her husband, Steve Allen, testified about another liaison. They testified that on numerous occasions they saw Wilson Desselle's truck parked late at night and again early in the morning at Martha's home; they also testified that this relationship had been going on two to three times a week for the last two to three months (this would extend to a time before the parties' divorce) prior to the original hearing on Reuben's motion to modify the custody decree. Neither Evyonne nor Steve knew Desselle personally, they had never been in Martha's home when Desselle was present, and the only knowledge they had of Desselle's ownership of the truck was that they saw him standing near it while Desselle was at the fire station.
We find it significant that these parties' testimonies identified that these liaisons were taking place prior to Martha and Reuben's divorce, and were circumstances which existed at the time that Reuben chose not to contest Martha's designation as Randy's domiciliary parent. Accordingly, we conclude from the record before us that this testimony failed to establish a change in circumstances.
Moreover, we find that at the hearing on the motion for new trial, the trial court erred in failing to give adequate weight to the "reformation" rule. Louisiana jurisprudence is clear that when a parent terminates an adulterous relationship either by ceasing the immoral behavior or by marrying the paramour, that reformation obliterates that parent's previous indiscretion and can no longer be a factor in determining that parent's fitness for custody. Dykes v. Dykes, 488 So.2d 368 (La. App. 3rd Cir.1986), writ denied, 489 So.2d 1278 (La.1986), and cases cited therein.
In the case sub judice, the trial court also heard testimony that since Reuben was retired, he was able to devote more time to Randy's upbringing. In contrast, the trial court emphasized that Martha's work schedule often required her to bring Randy to a babysitter at 4:00 a.m. so that she could get to work on time.
In addition, Evyonne Allen testified that well before her parents' separation, which would have been before May of 1986, Martha once spanked Kathryn with a fly swatter, and that during the spanking the plastic end of the fly swatter came off. Evyonne also testified that once Martha grabbed her with her fingernails and scratched her arm.
We find this evidence insufficient to rebut the presumption in favor of joint custody and to show a change in circumstances. The evidence of Martha's use of babysitters is insufficient to show that it adversely affected Randy's best interest, particularly since the record is void of any evidence that the babysitters involved, a family who lived near Martha, were unfit to provide this service. We recognize that it is difficult for Randy to rouse that early in the morning and go to a babysitter, but that factor alone does not warrant a modification of custody absent a showing that it adversely affects the child. Likewise, the isolated instances of corporal punishment, neither of which involved Randy, do not rise to the level which would require Randy's removal from Martha's care. See McInnis v. McInnis, 511 So.2d 787 (La.App. 4th Cir.1987).
The last factor which Martha contends that the trial court improperly considered was Randy's preferences to live with his father. At the time of the hearing, Randy was nine years of age.
By agreement of the parties, the trial court heard Randy's testimony at the hearing on Martha's motion for a new trial concerning his custodial preference. The trial court first interviewed Randy in private in its chambers. Then in a closed courtroom with the parents excluded, he was tendered for examination by the attorneys for the sole purpose of exploring his preference. In the trial court's written reasons *243 for judgment[2], it stated that Randy's answers were consistent in both settings that he preferred living with his father. After conducting the closed hearing, the trial court also permitted Martha to present evidence from other witnesses about the possible influence Reuben may have had on the child's choice.
LSA-C.C. Art. 146(C)(2)(i) permits the trial court to consider the child's custodial preference, if the court deems the child is of sufficient age to express preference.
In Albarado v. Toler, 495 So.2d 355 (La. App. 3rd Cir.1986), we were faced with a question of whether the trial court abused its discretion in considering the preference of three children, the youngest of whom was 10 years of age, to live with their father. In finding no abuse of discretion in Albarado, we stated at page 359:
"Age alone does not determine whether a witness is a person of proper understanding and thus competent as a witness. The admission of the testimony of a child addresses itself to the sound discretion of the trial court."
See also Watermeier, supra; Dykes, supra.
Although we cannot say that the trial court abused its discretion in allowing Randy to testify, we find that the trial court placed undue emphasis on Randy's preference to live with his father. LSA-C.C. Arts. 146 and 157 make it clear that there are numerous factors which the trial court must consider in making its determination. In light of our disposition of the trial court's other reasons, we find that Randy's stated preference alone was insufficient to either modify custody or terminate the earlier joint custody decree.
Concerning the issue of joint custody, LSA-C.C. Art. 146(F) requires that if either parent opposes the modification or termination of the joint custody order, the trial court shall state in its decision the reasons for modification or termination of the joint custody order. This is mandatory. In the present case, the trial court clearly erred in failing to state its reasons for terminating its earlier decree of joint custody.
Finally, although we are cognizant of the vast amount of discretion vested in the trial court in its function of deciding custody cases, Bagents v. Bagents, 419 So.2d 460 (La.1982), we nevertheless find that the trial court in the present case abused its discretion in terminating joint custody. Until the trial court modified custody in February of 1988, Randy lived his entire life with his mother. Certainly on the evidence adduced at the original hearing on Reuben's motion to change custody, such action having been filed less than three weeks after the parties' divorce decree and the placement of Randy with his mother as domiciliary parent, Reuben could have contested Martha's continued custody of Randy at the time of their divorce; instead Reuben consented to Martha's continued custody of Randy. Moreover, the record shows that Martha and Reuben live in a small community in close proximity to each other where joint custody should pose no problem. There is a rebuttable presumption that joint custody is in the best interest of a minor child. LSA-C.C. Art. 146(C). The evidence was insufficient to rebut this strong presumption in favor of joint custody. Accordingly, under these circumstances, we find that Reuben failed to prove that it was in Randy's best interest to terminate *244 joint custody and grant sole custody to him.
For the foregoing reasons, the judgment of the trial court granting the care, custody, and control of Randall J. Simmons to his father, Reuben Simmons, is reversed. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the November 30, 1987, order of joint custody is reinstated, and Martha Simmons is recognized as the domiciliary parent of Randall J. Simmons. Costs of trial and this appeal are assessed to Reuben J. Simmons.
REVERSED.
NOTES
[*] Judge Charles Wm. Roberts, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Although Martha's petition for divorce refers to a joint custody plan, the record contains no joint custody plan, either prior to divorce or subsequent to the divorce.
[2] Although Randy's testimony in the closed courtroom is transcribed, his testimony in the trial court's chambers is not. In Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5th Cir. 1985), writ denied, 464 So.2d 301 (La.1985), our brethern of the Fifth Circuit addressed the trial court's private interview of a child of tender age without having a record made, and stated:

"[T]he appellate court, would be forced to trust completely and without reservation the discretion of the trial judge as to the propriety of his questions, his assessment of the veracity of the answers, and his entire judgment without ever knowing what was told to him. Such answers could well be the basis of his ruling."
See also Dykes, supra, at page 371.
In the present case, unlike Watermeier and Dykes, we are not confronted with as serious a problem regarding the trial court's determination of the minor child's competency to testify because, at least, the child's testimony in the presence of the trial judge and the attorneys was recorded and transcribed. Nevertheless, we find that the more proper procedure would have been for the trial court to have Randy's private testimony recorded and transcribed.