649 So.2d 1223 (1995)
Patrick C. SPARKS, Plaintiff-Appellee,
v.
Cheryl Blood SPARKS, Defendant-Appellant.
No. 94-1315.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
Writ Denied April 28, 1995.
*1224 William Douglas Pucheu, Ville Platte, for Patrick C. Sparks.
Jack W. Caskey, Lake Charles, for Cheryl Blood Sparks.
Before LABORDE, YELVERTON and COOKS, JJ.
LABORDE, Judge.
In this child custody proceeding, defendant mother seeks a reversal of the trial court's ruling granting plaintiff father custody of their three children. After a review of the record, we reverse, finding that a change of custody was not warranted.

FACTS
Plaintiff, Patrick C. Sparks, and defendant, Cheryl Blood Sparks, were married on January 25, 1975. Three children were born of the marriage. Patrick filed for divorce on July 9, 1993. In his original petition, Patrick requested joint custody of the children, with Cheryl as the domiciliary parent of their two youngest sons, Joshua and Tyler. Patrick subsequently submitted a Joint Custody Plan and a Consent Judgment, designating Patrick as the domiciliary parent of Ryan, their oldest son, and Cheryl as the domiciliary parent of the two younger boys, Joshua and Tyler, which were signed by the court on July 12, 1993.
In a supplemental petition filed September 10, 1993, Patrick amended his petition to include allegations that Cheryl was involved in an adulterous relationship, which began before the filing of his original petition for divorce. On November 3, 1993, Patrick obtained a final divorce on the grounds of adultery by default judgment, but continued the award of joint custody contained in the July 12, 1993, judgment.
On June 28, 1994, Patrick filed a Rule for Change of Custody requesting custody and control of all three minor children. He alleged that circumstances had changed since the previous award of custody, including charges that Cheryl regularly allowed her boyfriend to spend the night while the children were present, that she kept and smoked marijuana in the apartment while the children were present, and that she left the children alone at night.
Cheryl was served with the Rule to Change Custody on July 7, 1994. Because she had not been represented by counsel up to this point, on July 11, 1994, she filed a motion for continuance in proper person. This motion was denied by the trial court on July 12, 1994.
The custody hearing was held on July 28, 1994. The trial court granted custody of the children to Patrick. Cheryl subsequently filed a motion for a new trial, which was denied on August 23, 1994. Cheryl also filed a writ of certiorari with this court, which was denied on September 30, 1994.
Cheryl appeals the trial court's judgment granting custody of the children to Patrick, alleging two assignments of error:
1. The trial court erred in modifying the existing plan because there was no showing of a change of circumstances, and, *1225 alternatively, if there was any evidence of a change of circumstances, there was no evidence that the minor children were adversely or materially affected or that their welfare was in any danger; and
2. The trial court erred in denying the Motion for New Trial, and in failing to allow Cheryl to address the issue of her counsel's trial preparation.

ASSIGNMENT OF ERROR NUMBER ONE
Cheryl claims that Patrick did not demonstrate a change in circumstances which materially affected the welfare of the children sufficient to justify a change in circumstances, citing Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
In Peyton v. Peyton, 614 So.2d 185, 186 (La.App. 3 Cir.1993), this court enunciated the standard to be applied in custody hearings when there has not been a considered decree:
We find that the heavy burden of proof enunciated in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986) is not applicable to the matter sub judice. An uncontested decree in which no evidence is presented as to the fitness of the parents is not a "considered decree." In the present case, the original custody degree was by stipulation of the parties and not a considered decree. Accordingly, the test applicable in this modification of joint custody action is found in LSA-C.C. Arts. 131 and 134, and consists of what is in the best interest of the child. Miller v. St. Clergy, 535 So.2d 563 (La.App. 3rd Cir.1988); Simmons v. Simmons, 554 So.2d 238 (La.App. 3rd Cir. 1989). In determining what is in the best interest of the children, courts must examine all relevant facts, including but not limited to, stability of environment, standard of living each parent can provide, and the prior history of the children's custody. The role of the court is to determine the best interest of the children based upon relative fitness and ability of the competing parents in all respects to care for the children. Simmons, supra.
Similarly, in the present case, the parties did not contest the original custody award, and entered into a consent decree which was signed by the trial court on July 12, 1993. The parties stipulated that this consent decree remained in effect after the judgment of divorce was granted on November 3, 1993. Thus, at the hearing, the trial court was to consider the best interests of the children in determining custody.
The best interest of the child is to be determined according to La.Civ.Code arts. 131 and 134. La.Civ.Code art. 131 provides as follows:
Art. 131. Court to determine custody
In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.
Further, La.Civ.Code art. 134 provides:
Art. 134. Factors in determining child's best interest
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

*1226 (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
Although the trial judge stated that his concern was the best interest of the children, in stating reasons for judgment he seemed to focus only on the allegations concerning Cheryl's marijuana smoking. At the conclusion of the custody hearing, the trial court stated:
"... the court makes a finding of fact that there seems to be a lot of smoking of marijuana going on and consequentlyand partiesand other acts that constitute irresponsibility on Cheryl's part.
The evidence also shows that Patrick Sparks kicked the marijuana smoking habit some twelve to fourteen years and has only smoked marijuana two or three times during that period of time that he stopped.
On the other hand, the court makes a finding of fact that apparently Cheryl has not lost the habit and continues to do so. Although it is not necessarily in front of the children but on some occasions it was with the children present.
There is also a preponderance of evidence here that Cheryl would be willing, or would have been willing to let Patrick keep the children as long as she kept getting the child support payments.
Now, the evidence indicates that she lives in Sulphur and Patrick lives with his Mother, Gail Sparks, in the Lone Pine community in [sic] northern part of Evangeline Parish.
This court believes that the children's interest would be best served if custody was removed from Cheryl and awarded to Patrick, because the Court does not believe that the atmosphere at Patrick's homethe Court believes rather that the atmosphere at Patrick's home is much more healthy and wholesome and conducive to child rearing than the atmosphere is at Cheryl's home and that the environment in Lone Pine would be better for the children than it is in Sulphur according to the evidence.
The Court therefore decrees that Patrick will become the custodial parent henceforth. Of course, because of that custody will necessarily be removed from Cheryl."
Thus, we find that the trial court did not properly consider all of the factors listed in La.Civ.Code art. 134, but focused only on the allegation that Cheryl smoked marijuana.
Further, we find no merit to the allegations made by Patrick in his Rule for Change of Custody. Patrick claimed that Cheryl allowed her boyfriend, Steve Smith, to spend the night in her apartment when the children were present, that she regularly smokes marijuana in the apartment while the children are present, and that she has left the children in the apartment by themselves for several hours at a time.
In Simmons v. Simmons, 554 So.2d 238 (La.App. 3 Cir.1989), this court found that a mother's relationship with another man was not a change in circumstance which dictated a change in custody of the minor child from the mother to the father. The trial court found that the mother's liaisons had occurred before the original consent decree and thus were not a factor in the present custody hearing, because the father did not contest the mother's fitness at the time of the original custody decree. Similarly, in his Supplemental Petition, Patrick states that Cheryl informed him of her affair shortly before the filing of the original petition on July 9, 1993. Thus, Cheryl's extramarital affair is not a factor in determining custody.
In Monteleone v. Monteleone, 591 So.2d 1228 (La.App. 4 Cir.1991), the Fourth Circuit affirmed a trial court decision awarding custody to the mother. The father had alleged that the mother's habitual intemperance was a change in circumstance which resulted in the mother's unfitness as a parent. However, the trial court found that the evidence introduced by the father was based on the mother's habits during the marriage, *1227 and not after the original consent decree was entered into. In the present case, Patrick only had personal knowledge that Cheryl smoked while the parties were married, not after they were separated. Cheryl testified that Patrick knew that she had smoked pot before they split up. Patrick testified that since the separation, he has spent very little time with Cheryl, and that he had never seen her smoke marijuana in front of the children. Additionally, only one of the nine witnesses called by Patrick testified that Cheryl smoked in front of the children. Only Eric Sparks, Patrick's brother, testified that he witnessed Cheryl smoking marijuana while three year old Tyler was in the room. Cheryl denied this allegation. Also, none of the witnesses alleged that Cheryl had not been a good mother. Most of Patrick's witnesses were people who lived in Evangeline Parish, and did not have any knowledge of Cheryl's activities at her home in Denham Springs. Further, Patrick admitted smoking pot with Cheryl when they were in Mexico together, some four months before the hearing. Patrick claimed to have quit after this instance. Although Cheryl also claimed to have quit smoking after this instance, the trial judge discounted her testimony. We see no reason to punish the mother but reward the father for the same action.
In Reynolds v. Reynolds, 548 So.2d 64 (La.App. 3 Cir.1989), this court found that the fact that a mother left her ten year old child alone for short periods of time was not enough, in itself, to satisfy the change of circumstance rule enunciated in Bergeron and award custody to the father. Similarly, in the present case, although we do not condone Cheryl's actions in leaving her thirteen year old and three year old alone for a few hours, we do not find that this action mandates that Cheryl's custody of the children should be terminated. Apparently, this action only occurred one time. Cheryl did not endanger the children; her cousin Tina Blood lived nearby and was only a phone call away if needed. Since this incident, Tina stayed with the children when Cheryl was not at home. Subsequently, beginning in May, 1994, Cheryl began leaving her younger son at daycare when she could not be home.

ASSIGNMENT OF ERROR NUMBER TWO
In her second assigned error, Cheryl claims that the trial judge should have granted her request for a new trial, because her attorney did not have enough time to properly prepare for the custody hearing. Because we have reversed the trial court's judgment based on defendant's first assigned error, we need not address this assignment.

DECREE
The judgment of the trial court is reversed. Custody of the two minor children, Joshua and Tyler Sparks, shall remain with their mother, Cheryl Blood Sparks. Costs assessed to plaintiff-appellee, Patrick C. Sparks.
REVERSED AND RENDERED.