NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

CA 11-345

WILLARD A. HARP, ET AL.

VERSUS

PENNY D. PENNEY

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 224,616
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

**********

SYLVIA R. COOKS

JUDGE

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Jimmie C. Peters,

Judges.

AFFIRMED. Peters, J. dissents and assigns written reasons.

Kenneth Alfred Doggett
Attorney at Law
P.O. Box 13498
Alexandria, LA 71315-3498
(318) 487-4251
COUNSEL FOR DEFENDANT/APPELLANT:
    Penny D. Penney


Susan Ford Fiser
Attorney at Law
P.O. Box 12424

**Alexandria, LA 71315-2424**
**(318) 442-8899**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Willard A. Harp and Lisa Harp**

**E. Grey Burnes Talley**
**Burnes, Burnes & Talley**
**P. O. Box 650**
**Alexandria, LA 71309-0650**
**(318) 442-5231**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Christopher Earl Harp**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Penny D. Penney (Penny) and Christopher E. Harp (Chris) are the biological parents of a minor child, Kallie McKensie Harp (Kallie). They were never married. Both were in high school when Kallie was born. Both parties and Chris' mother and father, Willard and Lisa Harp (the Harps) have filed various petitions for custody of Kallie. All of the parties entered into a stipulated consent judgment on December 8, 2008 which was signed on January 28, 2009, awarding Chris and Penny joint legal custody and equal physical custody with additional stipulations concerning overnight visitors when either party has physical custody of the child. Chris was living with his parents at that time and continues to live with them. On March 31, 2009, Penny filed a new Rule to Modify Custody alleging grounds to modify the December 8, 2008 Consent Judgment signed on January 28, 2009.

Penny's new Rule to Modify was based upon allegations that Chris was charged with a DWI and operating a vehicle while his driving privileges were suspended on January 17, 2009. Chris was again stopped for a DWI on February 22, 2009, but after his father intervened with the police on his behalf, he was charged only with operating a motor vehicle while his driving privileges were suspended. On the very next day, police found Chris passed out behind the wheel of his car in the Taco Bell parking lot after striking the Taco Bell advertisement sign. He was again charged with DWI and with possession of marijuana, a violation of La.R.S. 40:966. A hearing on Penny's rule was reset multiple times. Before a hearing was held, Chris filed a Motion for Contempt and to Enforce Visitation, and the Harps filed a Third Supplemental and Amending Petition and Rule for Contempt and for Other Relief. Penny then filed an exception of no cause of action concerning the Harps' pleadings.

Chris alleged Penny violated the Consent Judgment by having an overnight guest of the opposite sex unrelated by blood or marriage while Kallie was with her and by not allowing phone calls as provided in the judgment. The Harps asserted they have a cause of action under La.Civ. Code art. 133 or alternatively, they are entitled to visitation rights under La.Civ. Code art. 136. The trial court set these issues for hearing on September 29, 2009. After taking the matter under advisement, the trial court ruled the Harps's Third Amended Petition relates back to the previous petitions filed and when combined with those previous petitions sets forth a cause of action under La.Civ. Code art. 133. The trial court then set the hearing for custody which was completed on March 18, 2010. None of Chris' criminal matters had come to trial before the custody hearing.

After taking the matter under advisement, the trial court concluded that Chris' criminal activity amounted to a material change in circumstances after the Consent Judgment, but further concluded that Penny failed to prove by clear and convincing evidence that the best interest of Kallie would be served by awarding her sole custody. The trial court further found the Harps proved Kallie would suffer substantial harm if either Chris or Penny were awarded custody. The trial court found it was in the child's best interest that joint custody be awarded Chris, Penny and the Harps with the Harps designated as domiciliary custodians. Penny appeals asserting three assignments of error.

## DISCUSSION

Penny argues that it was manifest error for the trial court to consider evidence which was stale and which had been reformed prior to the January 28, 2009 Consent Judgment. This included evidence of her numerous liasons with different men which occurred right up to the time she married her current husband. She further argued it was manifest error/abuse of discretion for the trial court to find that the Harps proved substantial harm would result from custody with Penny.

2

She also asserts the trial court manifestly erred in increasing custodial periods for Chris having found him to be an unfit parent while awarding less custodial periods to her.

Penny asserts she is entitled to application of the reformation rule in as much as she married her last paramour, who is her current husband, thereby prohibiting the trial court, and this court in its review, from considering her history of immoral behavior. We find that under the holding in *Weaver v. Weaver*, 01-1656 (La.App. 3 Cir. 5/29/02), 824 So.2d 438, Penny is not entitled to application of the reformation rule. Contrary to Penny's assertions, the Consent Judgment did not "cure" these acts nor remove them from present consideration. The trial court and this court in its review are not, as she asserts, precluded from considering evidence of Penny's numerous involvements with multiple partners when considering whether Penny enjoys the benefit of the reformation rule. Penny married Mr. Hinton two days before trial was scheduled. She became pregnant for one man while simultaneously dating Mr. Hinton, and miscarried that child right before marrying Mr. Hinton. Mr. Hinton testified that while Penny was dating him she had at least two men at her apartment and became pregnant for another man. Penny's argument ignores the rationale enunciated by Judge Gremillion in *Weaver* and, as he so aptly said therein, "misinterpret[s] the purpose of the rule." *Weaver* at 443. *Weaver*, as in the present case, also concerned a party's attempt to change custody previously awarded in a consent judgment. There, as here, the burden was on the mover to show a material change in circumstances. In *Weaver*, when considering application of the reformation rule to that litigant's behavior which had occurred over an eight year period of time preceding the hearing, this court stated:

> Although Laura argues that the reformation rule should apply in her case, we find that she has misinterpreted the purpose of the rule. If we accepted her argument, a parent could have an unlimited number of live-in paramours, which would all be excused so long as she were single at the time of trial or had married the most recent one. This is not the intent of the

3

reformation rule, which was instituted so that a parent's past indiscretion, which had ended, would not be the ultimate, deciding factor in awarding custody, either because the parent had discontinued the egregious behavior for some time prior to trial or had married the party. However, an eight year history of seven boyfriends who either lived or slept over on numerous occasions at Laura's residence, in the presence of her young daughter, is not the type of activity that will be obliterated under the reformation rule. Thus, it was properly considered by the trial court in making its decision.

*Weaver* at 443.

The trial court did not commit manifest error in considering evidence of events occurring before the consent judgment for purposes of determining a custody award based upon the best interest of the child. While evidence of events occurring before the Consent Judgment are not relevant to Penny proving a material change in circumstances such evidence can be very relevant and is admissible in determining the best interest of the child in awarding custody in this considered judgment. *See Crowson v. Crowson*, 742 So.2d 107 (La.App. 2 Cir. 1999) citing *Smith v. Smith,* 615 So.2d 926 (La.App. 1 Cir.), *writ denied*, 617 So.2d 916 (1993) and *Gautreau v. Gautreau*, 96-1458 (La.App. 3 Cir. 6/18/97), 697 So.2d 1339. "Evidence of incidents prior to entry of the stipulated judgment may not be relevant to prove a change in circumstances but may nevertheless remain relevant on the issue of best interest of the child." *Crowson* at 110. Further, as we reiterated in our holding in *Sparks v. Sparks*, 94-1315 (La.App. 3 Cir. 2/1/1995), 649 So.2d 1223, 1225, when the challenged custodial arrangement is not a considered decree but was a stipulated consent judgment in which no evidence was presented, the applicable test for modification of the consent judgment

[I]s found in LSA-C.C. Arts. 131 and 134, and consists of what is in the best interest of the child. *Miller v. St. Clergy*, 535 So.2d 563 (La. App. 3rd Cir. 1988); *Simmons v. Simmons*, 554 So.2d 238 (La.App. 3rd Cir. 1989). In determining what is in the best interest of the children, courts must examine all relevant facts, including but not limited to, stability of environment, standard of living each parent can provide, and the prior history of the children's custody. The role of the court is to determine the best interest of the children based upon relative

4

fitness and ability of the competing parents in all respects to care for the children.

*Id.*

Likewise, as we stated in *Newcomb v. Newcomb*, 01-1530 (La.App. 3 Cir. 3/6/02), 810 So.2d 1269: (Additional citations omitted)

> When reviewing a child custody matter, the trial court's decision is afforded great weight and the trial judge's discretion will not be disturbed on review absent a clear showing of abuse. *Bergeron v. Bergeron,* 492 So.2d. 1193 (La. 1986). "Each custody case must be decided on its own particular facts and circumstances, and the paramount goal is to do what is in the best interest of the minor children."

The trial court found the Harps met their burden of proof. The trial court expressed "grave concerns" regarding Chris' recent arrests, which all occurred after the consent judgment, thus amply supporting a finding that there has been a material change of circumstances since the stipulated consent custody decree, and supporting the Harps' contention that awarding custody to Chris would result in substantial harm to Kallie. We have repeatedly held that evidence of arrests is admissible in child custody hearings and is relevant to a determination of that parent's fitness. *See  L.E.P.S. v. R.G.P.*, 08-1349, (La.App. 3 Cir. 6/3/09), 11 So. 3d 633, *writ denied* , 09-1429 (La.7/1/09), 11 So. 3d 498, *appeal after remand* 59 So.3d 523 (La.App. 3 Cir. 3/16/11), *writ denied*, 11-770 (La. 5/27/11), 63 So.3d 999, and cases cited therein.

Likewise, the court could and did consider Penny's past behavior as it related to a determination of best interest of the child and in the Harps meeting their burden to prove that awarding sole custody to Penny would result in substantial harm to Kallie. A great deal of evidence was presented regarding the mother that covered a span of time before the consent judgment. This evidence was properly considered by the trial judge in determining the best interest of the child. There was evidence of Penny's past drug use and that she purchased drugs

while the child was with her. There was evidence that this young child slept in the bed between her mother and one of her paramours. There was evidence that Penny had two men at the same time stay at her apartment while the minor child was with her. There was evidence the child was subjected to smoking at home and in vehicles while with her mother. This was against the instructions of her doctors, and triggered allergic reactions for the child and made her physically ill. There was testimony from one of Penny's fellow strippers that Penny offered to sell her crystal meth and evidence that Penny was arrested in a drug raid. Penny claims she was just at the wrong place at the wrong time. Most disturbing of all was testimony that this little girl told her grandmother while she was treating Kallie's chapped/chafed genital area to "lick it" and that she had played doctor with one of her mother's friends. When considering all of the evidence presented, as the trial judge was allowed to do in making the first reasoned decision regarding custody, and determining the best interest of the child, the trial court's findings were well supported. We have no basis to overturn his decision placing the physical custody with the grandparents, who have provided this child the only stable environment she has known. "A trial court's determination of child custody is entitled to great weight on appeal and will not be disturbed absent a clear abuse of discretion." *L.E.P.S.,* at 643, citing *AEB v. JBE,* 99-2668 (La. 11/30/99), 752 So.2d 756. *See also Gautreau v. Gautreau*, 96-1548 (La.App. 3 Cir. 6/18/97), 697 So. 2d 1339, *writ denied*, 97-1939 (La. 11/7/97) 703 So.2d 1272. We find no abuse of discretion in the trial court's ruling and therefor affirm the trial court judgment. Costs of this appeal are assessed against Penny.

**AFFIRMED**.

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules – Courts of Appeal, Rule 2-16.3.

6

NUMBER 11-345

COURT OF APPEAL, THIRD CIRCUIT
STATE OF LOUISIANA

WILLARD A. HARP, ET AL.

VERSUS

PENNY D. PENNEY

PETERS, J., dissenting.

I respectfully disagree with the majority's affirmation of the trial court's ruling in this custody dispute. Neither the procedural history nor the applicable law supports an award of relief to either Penny or the Harps. I would reject both requests for relief and cause the consent decree to remain in full force and effect.

The matter is now before us because Penny appeals the trial court judgment which modified a prior decree wherein she and Chris were awarded the joint custody of their minor child, Kallie. The trial court's latest decree awarded joint custody[1] to Penny, Chris, and Chris' parents, Willard and Lisa Harp. However, in modifying the award, the trial court designated the Harps as domiciliary custodians. The majority proposes to affirm the trial court judgment.

While the matter appears before us for the first time, the litigation history is not unremarkable. Kallie was born on September 1, 2004. Her parents were still in high school at the time of her birth, and when she became pregnant, Penny dropped out of school and moved from her parents' home in the rural community of Deville, Louisiana, to the Harps' Alexandria, Louisiana home.[2] She resided with the Harps for several months prior to and following Kallie's birth, but as the relationship between Penny and Chris began to dissolve, Penny moved with her daughter back to

_____

[1]The custody decree obviously is not "joint," but constitutes a three-way custody sharing decree. However, for the purposes of this dissent, I will refer to the decree at issue as a "joint decree."

[2]Both the Deville community and Alexandria are in Rapides Parish, Louisiana.

her parents' home. After Penny moved from their home, the Harps joined with their son in a June 9, 2006 petition seeking a judgment awarding sole custody to the Harps or in the alternative, joint custody to the Harps and Chris.

The matter then became bogged down in procedural matters[3] and did not reach a conclusion until December 5, 2008, when the parties entered into a stipulated judgment. That stipulation was reduced to a written judgment on January 28, 2009. The stipulated judgment provided, among other things, that Chris and Penny would share Kallie's joint custody and would exchange physical custody each Friday after school. The judgment also provided that no domiciliary custodian would be appointed at that time; gave specific instructions concerning Kallie's educational needs; established the terms of child support due Penny; and set specific rules concerning the obligations each parent would have toward maintaining Kallie's relationship with the other parent and toward maintaining Kallie's moral values. The consent agreement obviously resulted in the Harps dismissing their claim for joint custody because the written judgment made no mention of this claim.

Thus, on December 5, 2008, Penny, Chris, and the Harps had resolved all the issues then pending before the trial court by a consent agreement which awarded Kallie's joint custody to her parents. However, even before the trial court reduced the consent agreement to written judgment form on January 28, 2009, Chris committed the first of a number of criminal acts that caused the custody agreement to begin unraveling. As pointed out by the majority, between January 17, 2009 and February 23, 2009, local law enforcement personnel stopped Chris three times for driving violations and possession of marijuana. Also, as pointed out by the majority,

---

[3]Recusal issues were responsible for a significant part of the delays associated with hearing the issues raised in the initial litigation.

2

but for his father's influence with Rapides Parish law enforcement personnel, the charges would have been more severe.[4]

Chris' criminal activity was the basis of Penny's March 31, 2009 rule wherein she requested that the trial court modify the January 2009 consent decree by awarding her Kallie's sole custody. In her rule, Penny asserted that Chris had a long history of alcohol and drug abuse and had been treated in alcohol rehabilitation programs on several occasions. Penny further asserted specifically that Chris "has a history of DWIs, driving under suspension and revocation, possession of DCS-3 and possession of marijuana resulting in guilty pleas including, but not limited to, possession of CDS-3." Because Chris was "once again" involved "with illegal narcotics, driving under revocation and DWI" this change of circumstances, according to Penny warranted a change of custody.

The Harps responded to the rule by filing a pleading entitled THIRD SUPPLEMENTAL AND AMENDING PETITION AND RULE FOR CONTEMPT AND FOR OTHER RELIEF. In that pleading, they asserted that Kallie had lived in their home a majority of the time since her birth; that both Judge George C. Metoyer, Jr. and Judge F. Rae Swent of the Ninth Judicial District had previously awarded them visitation/custody rights;[5] that Penny had lived with a man not her husband subsequent to the consent judgment; and that Penny had not allowed the grandparents to speak to Kallie by telephone. The Harps further asserted in their petition that in the previous summer, Penny did not always bring the child to child care. Instead, she would allow her father or brother to care for the child. Finally, and despite the overwhelming evidence to the contrary, the Harps asserted in their pleading that their son, Chris, does not have a substance abuse problem. Initially, the trial court treated

---

[4]This influence may also explain why none of the charges had gone to trial at the time of the trial on the change of custody.

[5]Neither of these judges participated in the matters leading up to the consent decree. Their participation occurred before the recusal motions previously mentioned.

the Harps' filing as a rule to show cause, but in response to an exception of no cause of action filed by Penny, the trial court concluded that the Harps' pleading somehow related back to the pleadings filed before the consent judgment and, therefore, stated a cause of action.

Chris' only response to Penny's rule was a rule of his own seeking to enforce the visitation provisions of the consent judgment and to have Penny held in contempt of court for violating other terms thereof.

As pointed out by the majority, the conflicting rules went to trial in March of 2010, and the trial court issued written reasons for judgment on May 26, 2010. The first paragraph of its written reasons for judgment recognized that the only issues before it were those raised in the three pleadings set forth above and concluded that Kallie's best interest would be served by awarding joint custody to the litigants with the Harps having domiciliary custody and the parents having specific visitation privileges.

The first assignment of error raised by Penny relates to the trial court's use of evidence of events occurring before rendition of the December 5, 2008 consent judgment.

> A consent judgment is a bilateral contract in which parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing hope of gain against fear of loss. La.Civ.Code art. 3017; *Plaquemines Parish Government v. Getty Oil Co.*, 95-2452 (La.5/21/96); 673 So.2d 1002. "A judgment, whether it results from the assent of the parties or is the result of a judicial determination after a trial on the merits, is and should be accorded sanctity under the law." *Id.* at 1006.

*Deville v. Rapides Area Planning Com'n*, 97-1437, p. 8 (La.App. 3 Cir. 6/17/98), 715 So.2d 577, 580-81, *writ denied*, 98-1943 (La. 10/30/98), 727 So.2d 1167.

Thus, the general rule would seem to be that the December 8, 2008 consent judgment must be accorded a degree of sanctity under the law and any issue resolved by its terms should not be used to establish a cause of action in a later proceeding. However, as pointed out by the majority, this general rule does not apply when

4

considering the best interests of a child. *See Crowson v. Crowson*, 32,314 (La.App. 2 Cir. 9/22/99), 742 So.2d 107, and the other cases cited by the majority.

In considering both Penny's and the Harps' request for sole custody, I recognize, as does the majority, that the consent agreement was not a considered decree subject to the heavy burden of proof enunciated in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986). Still, both Penny and the Harps were required to first show that a change of circumstances had occurred since the consent judgment and that their proposed modification in the consent judgment was in Kallie's best interest. *See Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478. Both the trial court and the majority fell into error in evaluating this matter by not first requiring each litigant to prove a change of circumstance.

The trial court recognized the need for the parties to show a change of circumstances, but did not require them to do so. With regard to Penny's rule, the trial court found that Chris' criminal activity constituted a change of circumstance. In reaching this conclusion, the trial court ignored the content of Penny's rule wherein she plainly asserts that Chris' new criminal acts were nothing more than a continuing example of his reliance on alcohol and narcotics and his unfitness as a parent.

In considering the Harps' request for a change of the consent judgment, the trial court and the majority simply ignored their obligation to establish a change of circumstances. The Harps were parties to the December 2008 consent agreement and are also bound by the change of circumstance requirement. Not only did the trial court and the majority not recognize that the Harps' pleadings were nothing more than assertions of continuing behavioral defects in Penny, but the trial court had to incorporate the Harps' pre-December 2008 pleadings to find that they even stated a cause of action in the current proceeding.

5

This litigation is the perfect example for why a litigant seeking a modification of a consent decree must *first* establish a change of circumstances *before* the best interest element can even be considered. Absent the change of circumstances burden, there would never be closure to custody litigation. That being the case, I would find that neither Penny nor the Harps stated a cause of action in their rules for change of custody and would dismiss their rules on that basis. *See* La.Code Civ.P. art. 927.

Even if I were to assume the trial court correctly concluded that Chris' criminal difficulties constituted a change of circumstances, I would still not change the custody provisions of the consent judgment. Accepting that assumption, I would agree with the trial court that Penny did not meet her burden of proof that awarding her sole custody was in Kallie's best interest. That finding would cause her request for relief to be denied. However, the Harps could not rely on Penny's proof of a change of circumstances pertaining to the relationship between she and Chris to pursue their claim against Penny. They have their own burden of proof when it comes to a change of circumstance. The best that might have come of that situation would have been for Penny to retain her custodial rights and for the Harps to be awarded Chris' custodial rights. That is not what occurred in this litigation.

Finally, I find difficulty with the decree itself. The Harps base their claim for relief under La.Civ.Code art. 133, which provides:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court *shall* award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

(Emphasis added).

With regard to the nonparents' rights, this court in *Whitman v. Williams*, 08-1133, p. 2 (La.App. 3 Cir. 2/4/09), 6 So.3d 852, 853 (second alteration in original), stated:

> [T]he "concept of parental primacy is well established in Louisiana law" and that a nonparent is "required to make a very strong showing before custody should be awarded in their favor." *Wilson v. Paul*,

6

08-382, p. 2 (La.App. 3 Cir. 10/1/08), 997 So.2d 572, 574. Furthermore, "[i]n a conflict between parents and nonparents, the parent enjoys the paramount right to custody of a child, and may be deprived of such right only for compelling reasons." *Id.* (quoting *Tennessee v. Campbell*, 28,823, p. 6 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274, 1278). As such, the nonparent bears the burden of proving that "granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an award of custody to the nonparent." *Id.* (quoting *Tennessee*, 682 So.2d at 1278).

In this case, the trial court did not award custody to the grandparents as is allowed by La.Civ.Code art. 133. Instead, it awarded "joint custody" to the three litigants. This award of joint custody conflicts with its factual finding that the Harps carried their burden of establishing that custody to either parent would result in substantial harm to Kallie as well as the codal authority to award a nonparent custody because, implicit within the judgment rendered, was a finding that joint custody to the parents would not result in substantial harm to Kallie.

I fully recognize that as pointed out in *Griffith v. Latiolais*, 09-824 (La.App. 3 Cir. 3/3/10), 32 So. 3d 380, *aff'd in part and rev'd in part on other grounds*, 10-754 (La. 10/19/10), 48 So.3d 1058, the manifest error rule controls our review of factual findings in a child custody case, and that in determining the best interest of a child, the trial court is vested with broad discretion and its decision will not be disturbed absent a clear abuse of discretion. However, I also note that in that opinion, this court also noted the supreme court's statement in *Everett v. Everett*, 433 So.2d 705, 708 (La.1983), that "[a]n award of custody is not a tool to regulate human behavior." It appears to me that this latter statement is the impetus for the decision.

In this case, all the litigants had the opportunity to lay almost everything that would ultimately be presented in this latest round of litigation, before the trial court at the December 2008 hearing. Regardless of the reasons for not proceeding to trial in December of 2008, when they did not take advantage of their day in court, they not only became bound by the compromise agreement, but also became bound by the

7

change of circumstances burden of proof in future custody litigation. Neither Penny nor the Harps met that burden, and the trial court should have rejected both requests to modify the consent decree without going any further. Absent proof of this element by one or both of the litigants, any consideration of evidence on the best interest element is clearly error.

For the foregoing reasons, I would affirm the trial court's rejection of Penny's claim for sole custody of Kallie, but would reverse the trial court's award of joint custody to Penny, Chris, and the Harps, and would render judgment reinstating the joint custody judgment of January 28, 2009.